No. 08-260
(Judge Emily C. Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PETER A. ANDERSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. MCCARTHY
Assistant Director

A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

July 15, 2008

Attorneys for Defendant

## TABLE OF CONTENTS


STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

I. Nature Of The Case ........ 2

II. Statement Of The Facts ........ 3

ARGUMENT ........ 3

I. The Amended Complaint Should Be Dismissed Because This Court Does Not Possess Jurisdiction To Entertain Plaintiff's Claim ........ 3

A. Introduction ........ 3

B. Applicable Standard ........ 5

C. Mr. Anderson's Claim Is Not Based Upon Any Statute That Is Money Mandating For Purposes Of Establishing This Court's Jurisdiction ........ 5

1. Title 38, United States Code, Section 3732(a)(1) Is Not Money-Mandating As To Mr. Anderson ........ 5

2. Title 38 United States Code, Section 5302 And 38 C.F.R. § 1.967 Are Not Money-Mandating As To Mr. Anderson ........ 8

3. In The Absence Of A Money-Mandating Statute, This Court Lacks Jurisdiction To Entertain Mr. Anderson's Request For Declaratory Judgment And Equitable Relief ........ 9

D. Claims Under 38 U.S.C. § 5302 and 38 C.F.R. § 1.967 Must First Be Made In An Administrative Forum ........ 10

II. In The Alternative, Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted ........ 11

A. Applicable Standard ........ 11

B. The Relevant Federal Statutory Schemes Do Not Permit The Secretary To Pay To Defaulted Borrowers The Proceeds From Post-Redemption Sales ........ 11

1. Mr. Anderson Has No Right To Any Part Of Sales Of His Former Property That Occurred After The Foreclosure Sale Had Been Perfected ........ 12

2. Federal Law Not Only Authorizes The VA To Retain Proceeds From A Third-Party, Post-Redemption Sale, But Also Requires the VA To Deposit The Proceeds, If Any, Into The Program's Financing Account Pursuant To The Federal Credit Reform Act of 1990 ........ 16

CONCLUSION ........ 22

# TABLE OF AUTHORITIES

## CASES


Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .......... 5

Bell Atlantic Corp. v. Twombly,
550 U.S. —, 127 S. Ct. 1955 (2007) .......... 11

Berdick v. United States,
222 Ct. Cl. 94 (1979) .......... 4

Carter v. Derwinski,
987 F.2d 611 (9th Cir. 1993) .......... 19

Estelle v. Gamble,
429 U.S. 97 (1976) .......... 4

Conley v. Gibson,
355 U.S. 41 (1957) .......... 11

Eubanks v. United States,
25 Ct. Cl. 131 (1992) .......... 4

Fisher v. United States,
402 F.2d 1167 (Fed. Cir. 2005) .......... 6

Fitzgerald v. Cleland,
650 F.2d 360 (1st Cir. 1981) .......... 12, 15, 16, 21

Gatter v. Nimmo,
672 F.2d 343 (3d Cir. 1982) .......... 7, 18

Godwin v. United States,
338 F.3d 1374 (Fed. Cir. 2003) .......... 11

Grant v. United States Dep't of Veterans Affairs,
827 F. Supp. 418 (S.D. Tex 1993) .......... 12, 13, 14, 21

Greenlee County v. United States,
487 F.3d 871 (2007) .......... 6

Harlow v. Fitzgerald,
457 U.S. 800 (1982) .......... 5

Iselin v. United States,
270 U.S. 245 (1926) .......... 18

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) .......... 9

Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,
525 F.3d 1299 (Fed. Cir. 2008) .......... 6

King v. United States,
81 Fed. Cl. 766 (2008) .......... 5

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) .......... 4

Martyn v. First Fed. Sav. & Loan Ass'n,
257 So. 2d 576 (Fla. Dist. Ct. App. 1971) .......... 13

McKnight v. United States,
259 F.2d 540 (9th Cir. 1958) .......... 12, 16, 21

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936) .......... 5

Morris v. Osteen,
948 So. 2d 821 (Fla. Dist. Ct. App. 2007) .......... 13, 16

Office of Personnel Mgmt. v. Richmond,
496 U.S. 414 (1990) .......... 18

Passamaquoddy Tribe v. United States,
82 Fed. Cl. 256 (2008) .......... 5

PODS, Inc. v. Porta Stor, Inc.,
484 F.3d 1359 (Fed. Cir. 2008) .......... 5

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998) .......... 11

Rank v. Nimmo,
677 F.2d 692 (9th Cir. 1982) .......... 8, 12, 19

Reeside v. Walker,
52 U.S. 272 (1850) .......... 18

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) .......... 5

Roberts v. Cameron-Brown,
556 F.2d 356 (5th Cir. 1977) .......... 8

Scheuer v. Rhodes,
416 U.S. 232 (1974) .......... 5

Shivers v. Landrieu,
674 F.2d 906 (D.C. Cir. 1981) .......... 8

Singleton v. United States,
6 Ct. Cl. 156 (1984) .......... 4

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998) .......... 5

Stephanatos v. United States,
81 Fed. Cl. 440 (2008) .......... 4, 9

United States v. Jones,
155 F. Supp. 52 (M.D. Ga. 1957) .......... 13, 21

United States v. MacCollum,
426 U.S. 317 (1976) .......... 18

United States v. Shimer,
367 U.S. 374 (1961) .......... 8, 19

## STATUTES and REGULATIONS

2 U.S.C. § 661 .......... 20

28 U.S.C. § 1331 .......... 3

28 U.S.C. § 1491 .......... 5

28 U.S.C. § 2201 .......... 2, 9

38 U.S.C. § 1816 .................................................... 7

38 U.S.C. § 3720 .................................................... 15, 17

38 U.S.C. § 3722 .................................................... 21

38 U.S.C. § 3727 .................................................... 22

38 U.S.C. § 3732 .................................................... passim

38 U.S.C. § 3733 .................................................... 18

38 U.S.C. § 3734 .................................................... 20, 21

38 U.S.C. § 5302 .................................................... passim

38 C.F.R. § 1.911 .................................................... 10

38 C.F.R. § 1.967 .................................................... 2, 8, 9, 10

38 C.F.R. § 36.4323 .................................................... 19

1945 Amendments to the Servicemen's Readjustment Act of 1944, Act of Dec. 28, 1945,
Pub. L. No. 79-268 § 506, 59 Stat. 630 .................................................... 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PETER A. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-260 |
| v. | ) | (Judge Emily C. Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the complaint, its attachments, and the following brief.

**DEFENDANT'S BRIEF**

**STATEMENT OF THE ISSUES**

1. Whether either 38 U.S.C. § 3732(a)(1) or 38 U.S.C. § 5302 is money-mandating for the purposes of establishing this Court's jurisdiction under the circumstance where a borrower who has defaulted under a loan guaranteed by the Department of Veterans Affairs ("VA") and had his property sold by his lender to the VA at a foreclosure sale, is attempting now to lay claim to monies that the VA has obtained in excess of the amount of its guaranty through a subsequent, private sale to a third party.

2. Whether this Court may grant a declaratory judgment or entertain an equitable action in the absence of a money-mandating statute.

3. Whether an individual attempting to seek relief pursuant to 38 U.S.C. § 5302 and 38 C.F.R. § 1.967 must exhaust administrative remedies before seeking judicial review of his claim.

4. Whether a borrower who has defaulted upon a loan guaranteed by the VA and had his property sold to the VA at a court-ordered foreclosure sale fails to state a claim to any amount realized by the VA in excess of the amount of the VA's guaranty through a subsequent private sale to a third party.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This is a matter originally brought in United States District Court for the Middle District of Florida, and transferred on plaintiff's motion to the Court of Federal Claims. In the amended complaint filed in this Court, plaintiff, Peter Anderson, contends that the VA, which purchased his property at a foreclosure sale after his default upon a VA-guaranteed loan, is required to remit to him amounts in excess of the guaranty amount that the DVA realized when it re-sold his property at a later date to a third party. Mr. Anderson claims that, because the VA retained the proceeds of the third party sale, the agency committed an "ultra vires act in violation of 38 U.S.C. § 3732(a)(1)" and a "breach of implied right of action for failure to refund excess proceeds." Alternatively characterizing his suit as a declaratory judgment action, "an equitable action for restitution of surplus funds," and "an action for breach of an implied right of action under Federal law," Mr. Anderson seeks a declaration of rights under 28 U.S.C. §§ 2201 et seq., an award of any sale proceeds received by the VA in excess of its guaranty, plus interest, attorney fees and costs, and possibly the entry of an unspecified injunction.

## II. Statement Of The Facts

Mr. Anderson is an individual who financed the purchase of real property through a note and mortgage issued by a bank and guaranteed by the VA. Compl. ¶ 13.[1] When Mr. Anderson became delinquent in his payments, the bank foreclosed the loan, and also made a claim against the VA as the guarantor or surety on his note. Id. ¶¶14-16. At the resulting foreclosure sale, the VA was the high bidder, and purchased Mr. Anderson's property from the bank. Id. ¶ 19-20. Some time later, and in a separate, private sale, the VA sold the property to a third party for an amount that exceeded the amount of the guaranty that it had originally extended for Mr. Anderson. Id. ¶ 21-22. This action followed.

## ARGUMENT

## I. The Amended Complaint Should Be Dismissed Because This Court Does Not Possess Jurisdiction To Entertain Plaintiff's Claim

### A. Introduction

This case is before this Court pursuant to a transfer order entered by a district court. Despite the transfer, Mr. Anderson has not identified any basis upon which jurisdiction lies in this Court. Rather, the amended complaint continues to indicate that "[o]riginal jurisdiction over this civil action is properly lodged before the United States District Court pursuant to 28 U.S.C. 1331 because this case or controversy arises under the laws of the United States," Id. ¶ 4, and that "[v]enue is proper in the District Court for the Middle District of Florida . . . ." Id. ¶ 6. To this end, Mr. Anderson alleges that jurisdiction is proper because his complaint is "brought pursuant to the federal Declaratory Judgment Act . . . ." id. ¶ 1, and is both "an equitable action for

[1] For the purposes of this motion only, we accept as true the factual allegations set forth in the complaint.

restitution of surplus funds . . . ." id. ¶ 2, and "an action for breach of an implied right of action under Federal law . . . ." Id. ¶ 3.

"The mere transfer of a case from the District Court to [the Court of Federal Claims] does not establish jurisdiction . . . ." Singleton v. United States, 6 Ct. Cl. 156, 165 (1984); accord Eubanks v. United States, 25 Ct. Cl. 131, 137 (1992) (citing Berdick v. United States, 222 Ct. Cl. 94, 99 (1979)). Rather, "[t]he claim stated in the complaint must fall within the specific categories enumerated by the Tucker Act or the claim must be dismissed." Eubanks, 25 Ct. Cl. at 137 (citing Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 150-51 (1981)). Moreover, "the defendant is not estopped from arguing lack of [this Court's] jurisdiction even if it may have urged lack of jurisdiction in the District Court based on jurisdiction in [the Court of Federal Claims]." Singleton, 6 Ct. Cl. at 165 (citing Marshall N. Dana Constr., Inc. v. United States, 229 Ct. Cl. 862, 865 (1982)).

Because Mr. Anderson is represented by counsel, his complaint, unlike complaints filed by pro se litigants, may not be liberally construed by this Court. Cf. Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating that pro se plaintiffs are given more latitude in their pleadings and are not held to rigid standards or formalities imposed upon parties represented by counsel). However, in the interest of avoiding the delay that would result from urging that Mr. Anderson replead his complaint in this matter, the Government will interpret Mr. Anderson's reference to two Federal statutes, Compl. ¶¶ 41, 49, as an attempt to invoke this Court's Tucker Act jurisdiction, given that this Court lacks jurisdiction to grant either general equitable relief, Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), or declaratory relief not incidental to a bid protest or to a money judgment. See Stephanatos v. United States, 81 Fed. Cl. 440, 445

(2008). For the reasons set forth in detail below, even under a lenient interpretation, Mr. Anderson's complaint should be dismissed for lack of subject matter jurisdiction.

## B. Applicable Standard

"Subject matter jurisdiction is a threshold matter that must be determined at the outset of a case." King v. United States, 81 Fed. Cl. 766, 768 (2008) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007)). Mr. Anderson bears the burden of establishing this Court's jurisdiction to entertain his claim, see Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). "In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction . . . [a] court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff." Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256, 261 (2008) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982), and Reynolds, 846 F.2d at 747).

## C. Mr. Anderson's Claim Is Not Based Upon Any Statute That Is Money Mandating For Purposes Of Establishing This Court's Jurisdiction

### 1. Title 38, United States Code, Section 3732(a)(1) Is Not Money-Mandating As To Mr. Anderson

The Tucker Act provides that this Court possesses jurisdiction to entertain claims against the United States that are founded upon the Constitution, a Federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491 (2008). "[W]hen a claim is

brought under the Tucker Act, the Court of Federal Claims must first consider whether the statute or regulation is money-mandating," Greenlee County v. United States, 487 F.3d 871, 876 (2007) (citing Fisher v. United States, 402 F.2d 1167, 1172 (Fed. Cir. 2005)), meaning "money-mandating for the damage sustained . . . [and] reasonably amenable to the reading that the plaintiff is within the class of plaintiffs entitled to recover . . . if the elements of a cause of action are established." Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1307 (Fed. Cir. 2008) (internal quotations and citations omitted). In order to make that determination, "the Court of Federal Claims asks only whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established." Greenlee, 487 F.3d at 876 & n.2 (discussing Cambio Comdiv S.A. v. United States, 291 F.3d 1356 (Fed. Cir. 2002)).

Based upon the allegations contained in the amended complaint, Mr. Anderson is a member of a class of individuals who (1) financed the purchase of property through a note and mortgage issued by a bank and guaranteed by the VA through the VA's loan guaranty program, Compl. ¶¶ 12-13; (2) had a loan foreclosed by the lender, id. ¶¶14-15; (3) had the property sold at a foreclosure sale where the VA was the high bidder, see id ¶¶ 19-20, and (4) later discovered that in a subsequent, private sale to a third party, the VA had sold the property for an amount that was greater than the amount of its guaranty. See id. ¶¶ 21-24. Mr. Anderson contends that, based upon 38 U.S.C. § 3732(a)(1) and "equitable principles of fairness and the beneficial purposes of the loan guaranty program," the VA was required to remit to him any sums that it obtained in excess of the amount of its guaranty after it resold his property. Id. ¶¶ 45-47.

Even a cursory examination of 38 U.S.C. § 3732(a)(1) reveals, however, not only that the statute does not provide for the kind of scheme that Mr. Anderson suggests, but also that Mr. Anderson does not even fall within the class of individuals for whom § 3732(a)(1) is money mandating. This subsection provides in relevant part as follows:

> In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Secretary of such default. Upon receipt of such notice, the Secretary may . . . pay to such holder the guaranty of not in excess of the pro rata portion of the amount originally guaranteed. Except as provided in section 3703(e) of this title, if the Secretary makes such a payment, the Secretary shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guarantee.

38 U.S.C. § 3732(a)(1).

Section 3732, like its direct predecessors, 38 U.S.C. § 1816 and Section 506 of the 1945 Amendments to the Servicemen's Readjustment Act of 1944, Act of Dec. 28, 1945, Pub. L. No. 79-268 § 506, 59 Stat. 630, "was enacted solely in the interest of the [G]overnment as surety, <u>not of defaulting obligors</u>." <u>Gatter v. Nimmo</u>, 672 F.2d 343, 347 (3d Cir. 1982) (interpreting 38 U.S.C. § 1816 and Section 506). (emphasis supplied).[2] As such, § 3732(a)(1) is not reasonably amenable to a reading that Mr. Anderson is within the class of plaintiffs entitled to recover if the elements of a cause of action were to be established, and the statute is not money-mandating as to Mr. Anderson.

---

[2] The <u>Gatter</u> court was interpreting 38 U.S.C. § 1816, which provided, in relevant part, that "[i]n the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Administrator who shall thereupon pay to such holder the guaranty . . . and shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty." <u>Gatter</u>, 672 F.2d at 344 (quoting 38 U.S.C. § 1816(a)).

This conclusion is consistent with the general, recognized purposes of the guaranty provisions of the VA's loan program "to operate as the substantial equivalent of a down payment in the same amount by the veteran on the purchase price, in order to induce prospective mortgagee-creditors to provide 100% financing for a veteran's home." United States v. Shimer, 367 U.S. 374, 383 (1961). The program "relies on financial incentives to accomplish a welfare objective and does not purport to confer enforceable federal rights directly on the veteran-borrower." Rank v. Nimmo, 677 F.2d 692, 697 (9th Cir. 1982) (citing as support by analogy Shivers v. Landrieu, 674 F.2d 906, 911 (D.C. Cir. 1981), and Roberts v. Cameron-Brown, 556 F.2d 356, 360 (5th Cir. 1977)). Because § 3732(a)(1) is not money-mandating as to Mr. Anderson, it provides no basis for the Court to exercise jurisdiction under the Tucker Act.

**2. Title 38, United States Code, Section 5302 And 38 C.F.R. § 1.967 Are Not Money-Mandating As To Mr. Anderson**

Mr. Anderson's resort to 38 U.S.C. § 5302, captioned "Waiver of Recovery of Claims by the United States," also fails to establish Tucker Act jurisdiction. That provision states in relevant part as follows:

> With respect to any loan guaranteed, insured, or made under chapter 37 of this title, the Secretary shall . . . waive payment of an indebtedness to the Department by the veteran . . . following default and loss of the property, where the Secretary determines that collection of such indebtedness would be against equity and good conscience.

38 U.S.C. § 5302(b). With this statutory provision, as with § 3732(a)(1), Mr. Anderson is not within the class of plaintiffs entitled to recover if the elements of a cause of action are established. By its plain terms, § 5302(b) applies only to the individuals who have some sort of indebtedness to the VA. Mr. Anderson, who does not make any allegation in his complaint that

he emerged from his foreclosure sale with any sort of indebtedness to the VA, would have this Court conclude that the statute applies equally to the indebted and to the non-indebted. This is a reading of the statute that is completely inconsistent with its plain language and content.

Mr. Anderson's reference to 38 C.F.R. § 1.967, captioned "Refunds," fares no better. In its opening paragraph, the regulation indicates that it applies to "any portion of an indebtedness resulting from participation in benefits programs administered by the Department of Veterans Affairs which has been recovered by the U.S. Government from the debtor . . . ." and indicates that such indebtedness "may be considered for waiver." 38 C.F.R. § 1.967(a). Mr. Anderson relies upon subsection (d) of that provision, which states, in relevant part, that "[o]nly where the amount collected exceeds the balance of the indebtedness still in existence will a refund be made in the amount of the difference between the two." 38 C.F.R. § 1.967(d). Again, because Mr. Anderson is not indebted, he is not within the class of plaintiffs who could recover.

### 3. In The Absence Of A Money-Mandating Statute, This Court Lacks Jurisdiction To Entertain Mr. Anderson's Request For Declaratory Judgment And Equitable Relief

Neither Mr. Anderson's appeal to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, nor considerations of equity, e.g., Compl. ¶¶ 2, 26-34, 45, places his complaint within this Court's jurisdiction. "It is rudimentary that the Court of Federal Claims lacks jurisdiction to grant general equitable relief," including declaratory and injunctive relief. Stephanatos, 81 Fed. Cl. at 445 (citing Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) and Wheeler v. United States, 11 F.3d 156, 159 (Fed. Cir. 1993)). Rather, in order to fall within this Court's jurisdiction, claims for equitable relief must be either made in the context of a bid protest or "tied and subordinate to a money judgment." Id. (quoting James v. Caldera, 159 F.3d 573, 580-81

(Fed. Cir. 1998). Because, as discussed in detail above, none of the Federal statutes upon which Mr. Anderson relies is money-mandating for the class of which he is a member, this Court may not grant him declaratory relief, or otherwise entertain what he calls an "equitable action for restitution of surplus funds." Compl. ¶ 2. As such, Mr. Anderson's complaint should be dismissed in its entirety.

**D. Claims Under 38 U.S.C. § 5302 and 38 C.F.R. § 1.967 Must First Be Made In An Administrative Forum**

It also bears noting that, even if Mr. Anderson were in the class of plaintiffs for whom 38 U.S.C. § 5302 and 38 C.F.R. § 1.967 are money-mandating, this Court would still lack jurisdiction to entertain his complaint. 38 U.S.C. § 5302 contemplates an application for waiver made to the Secretary of the Department of Veterans Affairs, and the subsequent completion of administrative review within the agency. See 38 U.S.C. § 5302(b) ("The Secretary shall include in the notification a statement of the right of the veteran to submit an application for wavier under this subsection and a description of the procedures for submitting an application."); see also 38 C.F.R. § 1.911(c) (setting forth rights and remedies for disputing debt). Having not alleged in his complaint that he has exhausted his administrative remedies, Mr. Anderson has failed to state an actionable claim, and failed to establish that jurisdiction is proper in this Court, as opposed to in an administrative forum. Accordingly, his complaint should be dismissed.

In short, Mr. Anderson has failed to identify a statute or regulation that is money-mandating as to an individual in his circumstances. As such, his complaint should be dismissed for lack of jurisdiction.

## II. In The Alternative, Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

### A. Applicable Standard

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle it to a remedy. Godwin v. United States, 338 F.3d 1374, 1377 (Fed. Cir. 2003); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965. As under Conley, a complaint must still be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65.

### B. The Relevant Federal Statutory Schemes Do Not Permit The Secretary To Pay To Defaulted Borrowers The Proceeds From Post-Redemption Sales

In this case, Mr. Anderson advances the fundamentally flawed notion that a borrower who defaults on a VA-guaranteed loan and loses his property in a foreclosure sale held by his lender, in practical effect, never loses a financial interest in his property if the VA is the successful bidder on that property at the foreclosure sale. Specifically, Mr. Anderson contends that, either as a matter of statute or as a matter of equity, if the VA purchases such a property at the foreclosure sale and, even years later, sells that property to a third party in a private sale, the

defaulted borrower may lay claim to any amount of money that the VA realizes from that sale in excess of the amount of the guaranty that it provided for the loan upon which he defaulted. Mr. Anderson would presumably apply this rule even if the third party sale occurs years after the foreclosure, and even if the VA has expended in the meantime funds for taxes, insurance, maintenance and upkeep upon the property in question.

Even putting aside the obvious logical difficulties inherent in Mr. Anderson's argument, the relevant Federal statutory scheme, which is established by an intersection of the VA's Loan Guaranty Program and the Federal Credit Reform Act of 1990 ("FCRA"), does not permit the result sought by Mr. Anderson in this case. As such, even assuming the existence of jurisdiction over Mr. Anderson's to entertain claim, the amended complaint should still be dismissed.

**1. Mr. Anderson Has No Right To Any Part Of Sales Of His Former Property That Occurred After The Foreclosure Sale Had Been Perfected**

In the absence of a conflict between state and Federal law, VA-guaranteed loans are conducted by the note and lien holder in accordance with the laws of the state in which the property is located. See Rank v. Nimmo, 677 F.2d at 697. Thus, in a variety of situations arising under the VA loan guaranty program, courts, in keeping with the respective laws of their particular jurisdictions, have repeatedly recognized the "settled principle of mortgage law that the value of a mortgagor's equity in the mortgaged property is fixed by the amount bid at the foreclosure sale, and accordingly that, in the absence of fraud, a mortgagor has no right to compel a mortgagee to account to him for any profit made upon a subsequent resale of the premises." McKnight v. United States, 259 F.2d 540, 543 (9th Cir. 1958) (collecting cases); accord Fitzgerald v. Cleland, 650 F.2d 360, 362-63 (1st Cir. 1981); Grant v. United States Dep't of

Veterans Affairs, 827 F. Supp. 418, 422 (S.D. Tex 1993); United States v. Jones, 155 F. Supp. 52, 56 (M.D. Ga. 1957). The same principle applies in this case and bars Mr. Anderson from obtaining any of the relief he seeks in this Court.

Instructive in this regard is Grant v. United States Dep't of Veterans Affairs, a case in which the district court squarely confronted the question of whether defaulted borrowers under the VA loan guaranty program could lay claim to the net gain that the VA had realized upon a sale of their property that occurred after the date of the lender-held foreclosure sale, where the VA had been forced to purchase the property from the lender. See Grant, 827 F. Supp. at 419-20. Aside from the obvious factual parallel, Grant informs the result in this case because, under applicable Texas law, "the rights and liabilities of the parties were determined on . . . the foreclosure date." Id. at 421-22. Florida law, which would define Mr. Anderson's rights with respect to the property at issue here, is similar in that "the mortgagee only acquires rights of possession and title in the mortgaged property if there has been a 'default, court foreclosure, and sale to the mortgagee and transfer of title to him according to law.'" Morris v. Osteen, 948 So. 2d 821, 825 (Fla. Dist. Ct. App. 2007) (quoting Martyn v. First Fed. Sav. & Loan Ass'n, 257 So. 2d 576, 580 (Fla. Dist. Ct. App. 1971)).

Given that the applicable law fixed the parties' rights as of the time of the foreclosure sale, the Grant Court rejected the borrowers' "assert[ion] that they should be the beneficiaries of the subsequent sale of the property by the VA, the second conveyance after the foreclosure sale," specifically applying the principle that "sales subsequent to the foreclosure sale of property financed by a VA-guaranteed loan are simply irrelevant to the initial mortgagor's rights because the parties' rights are determined at the time of the foreclosure sale." Id. at 422 (citing

Fitzgerald, 650 F.2d at 363; McKnight, 259 F.2d at 544, Jones, 155 F. Supp. at 56) (emphasis supplied). The Court reasoned as follows:

> [I]f the VA's subsequent sale had been for less than the amount tendered at the foreclosure sale plus allowable expenses, the VA could not then claim an increase in the deficiency owed by the mortgagor. Likewise, when the VA's subsequent sale realizes more than the amount tendered at the foreclosure sale plus allowable expenses, the mortgagor is not entitled to reduce any deficiency arising from the foreclosure sale or to the return of any "surplus" resulting from the subsequent sale. Thus, the subsequent sale conducted by the VA has no bearing on the rights of the parties.

Id. (internal citations omitted).

The Court also noted that a contrary rule, that is, one that would require the VA "to remit to the original mortgagors a 'surplus' generated any time it sold property that initially was financed by a VA-guaranteed loan, even years after foreclosure by the lender," was "unsound from a policy point of view." Id. at 423. Specifically, the Court noted that "the continued viability of the loan guaranty program likely would be jeopardized" by a rule depriving the VA of the ability to benefit from subsequent sales of a defaulted borrower's property because "[t]he financial vitality of the VA loan guaranty program, which exists for the benefit of all qualified veterans, is promoted by the VA's ability to offset its losses with subsequent gains on the sale of VA-managed property." Id. Moreover, in a context where "in guaranteeing a loan, the VA, and through it, the taxpayers, assume the risk of loss of the property's value declines and the deficiency is unrecoverable[,] . . . the VA and the taxpayers should be entitled to benefit if the property's value ultimately rises." Id. The considerations that drove the decision in Grant also govern in this case.

It is important to note that Fitzgerald v. Cleland, 650 F.2d 360 (1st Cir. 1981), which the Grant plaintiffs cited in support of their claim to surplus and may be cited by Mr. Anderson in favor of his position in this case, does not support a result different from that achieved in Grant. In Fitzgerald, the court found that, rather than completing foreclosure proceedings and holding a sale, the lender elected to assign its interest in the property to the VA during the time period allowed the defaulting borrower to effect a redemption of the property. 650 F.2d at 360-61. Title to the property vested in the VA, not through a foreclosure sale at which the price of the property was fixed, but rather at the expiration of the borrower's redemption period. Id. The VA later sold the property at a price over and above the amount of the defaulted borrower's mortgage debt and other expenses. Id.

Although the court in Fitzgerald did allow the borrower to claim the surplus in the particular circumstances of that case,[3] those circumstances are not present here. First, the court in Fitzgerald was addressing a question not presented here, namely the obligations of the VA

[3] For purposes of this motion only, the Government accepts as true the factual findings and legal reasoning of the Fitzgerald court. There are, however, a number of aspects of the case that indicate a possible misunderstanding of the mechanics and application of the Federal loan guaranty statutes. For example, the court concluded in Fitzgerald that the VA acquired title to the property in question under its authority to become a direct lienholder pursuant to an assignment of the lender's interest and the subsequent running of the redemption period. See Fitzgerald, 650 F.2d at 360-61. As a result, the court tasked itself with interpreting the VA's authority to buy notes and extend forbearance in order to determine whether the defaulted borrower could lay claim to the surplus. Fitzgerald, 650 F.2d at 362-63. However, VA acquires property only under (1) its authority to buy and sell properties or (2) the lender's option to convey the properties to VA if the VA declines to receive the assignment of the defaulted loan and the lender forecloses. See 38 U.S.C. §§ 3720 and 3732(c)(5)-(c)(7). As such, it appears that, in focusing upon the VA's discretion as lienholder, the court was not addressing the appropriate statute. In addition, it bears noting that Federal statutes enacted since the Fitzgerald opinion, which are discussed in detail at infra Part II.B.2, have clarified that the proceeds from the VA's sale of a foreclosed property belong to the VA for purposes of funding its loan guaranty programs, rather than to the defaulted borrower.

toward a defaulted borrower when the VA has obtained title to the property in question under its statutory authority to obtain "assignment of [a] loan and security," rather than through a foreclosure. Id. at 362. In interpreting the VA's obligations, the First Circuit took into account the traditional, common law rule that "surpluses that arise out of foreclosure sales must ordinarily be returned to the debtor," and the loan guarantee act's "intent to treat veteran mortgagors favorably . . . ." and looked to the VA's sale of the property to determine whether a foreclosure sale, if it had been held, would have generated a surplus to which the veteran would have been entitled. See id. The court made clear, however, that its decision left in place the rule that governs the case at bar, that is, that the financial obligations of the parties toward each other are determined at the time of the foreclosure sale, and that sales that truly occur subsequent to the foreclosure sale are irrelevant to a valuation of the property and a reckoning between the guarantor and the borrower as to whether there is a deficiency or a surplus. See id. at 363 (citing and discussing favorably McKnight 259 F.2d 540, and Jones, 155 F. Supp. 52).

Because Mr. Anderson's rights in his property were determined and cut off at the time of the foreclosure sale held by his lender, see Morris, 948 So. 2d at 825, he fails to state a claim for any amount realized by the VA through a subsequent sale of his property to a third party. Accordingly, his complaint must be dismissed.

### 2. Federal Law Not Only Authorizes The VA To Retain Proceeds From A Third-Party, Post-Redemption Sale, But Also Requires the VA To Deposit The Proceeds, If Any, Into The Program's Financing Account Pursuant To The Federal Credit Reform Act of 1990

Mr. Anderson's references to 38 U.S.C. § 3732 and 38 U.S.C. § 5302 do not save his complaint from the operation of the principle that a defaulted borrower may not lay claim to

amounts realized in a post-foreclosure, separate sale of his property. To the contrary, even putting aside the common law rule discussed above, each of the relevant Federal statutory schemes that shape the VA's loan guaranty benefit program, that is, the program's authorizing statute, the Federal Credit Reform Act of 1990, and the measures that created the Veterans Housing Benefits Program Fund, not only forecloses the result that he seeks in this case, but also prohibits the VA from offering him the payment of any money realized through a subsequent sale.

The statutory authority for the VA's Loan Guaranty benefit program is found in chapter 37 of title 38, United States Code. Subchapter 1 of that chapter outlines general eligibility requirements such as eligibility, lender requirements, and certain protections of veterans. Subchapter 2 sets forth the purposes and types of loans that may be guaranteed, and under what conditions the Secretary is relieved of guaranty liability. Subchapter 3 contains a number of administrative provisions, including broad powers of the Secretary, what expenses and deposits are suitable for the program's Treasury account, and the several procedures that loan holders and VA must undertake when a borrower defaults on a VA-guaranteed loan.

Noticeably absent from chapter 37 is a provision that requires—or permits—the Secretary to remit to a veteran the sales proceeds of a VA-acquired property. Such a provision is not found in VA's authority to buy and sell foreclosed properties "upon such terms and for such prices as the Secretary determines reasonable." See 38 U.S.C. § 3720(a)(5). It also is not found in the property management provision, where the law prescribes how VA is to handle sales of VA-acquired properties. The statute even details the number of purchases that VA may finance, 38

U.S.C. § 3733(a)(1), sets forth the terms at which VA may make and sell such loans, 38 U.S.C. § 3733(a)(6), and requires that,

> For the purpose of facilitating the most expeditious sale, at the highest possible price, of real property acquired by the Secretary as the result of a default on a loan guaranteed, insured, or made under this chapter, the Secretary shall list all such property with real estate brokers under such arrangements as the Secretary determines to be most appropriate and cost effective.

38 U.S.C. § 3733(d)(2). What it does not authorize, however, is the provision of sales proceeds to borrowers who have failed to repay their loans. Given the "particularization and detail" with which Congress revised these interrelated sections, we must presume that Congress intended the outcome. See Iselin v. United States, 270 U.S. 245, 250 (1926).

Mr. Anderson contends that the authority is implied because VA's right to subrogation is limited to the extent of the amount paid on the guaranty. See Compl. ¶¶ 41-46. He posits that, if VA is only limited to the amount of the guaranty claim, then VA must have the authority, as well as be required, to remit proceeds to foreclosed borrowers. Even putting to side the fact that "[t]he established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress," United States v. MacCollum, 426 U.S. 317, 321 (1976) (citing Reeside v. Walker, 52 U.S. 272 (1850)); accord Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 424-25 (1990), Mr. Anderson's argument both misconstrues the purpose of § 3732(a)(1), and leads to a nonsensical result.

The object of § 3732(a)(1) is not one of limitation. As discussed in detail above, 38 U.S.C. § 3732 "was enacted solely in the interest of government as surety, not of defaulting obligors." Gatter, 672 F.2d at 346 (emphasis supplied). This means that it was not enacted to

constrain VA's property management options, but to be used as one tool in the protection of VA's surety rights. Courts have repeatedly held, and the relevant statutes show that subrogation is not the only right that VA has in connection with foreclosed loans. For instance, independent of its right to subrogate, the VA has a right to indemnification, see, e.g., 38 C.F.R. § 36.4323(e); United States v. Shimer, 367 U.S. 374 (1961); Carter v. Derwinski, 987 F.2d 611 (9th Cir. 1993), a discretionary right to purchase a note in default and receive an assignment of the loan and security, see, e.g., 38 U.S.C. § 3732(a)(2); Rank, 677 F.2d 692; and the authority to purchase and sell property according to such terms as the Secretary deems reasonable. See, e.g., 38 U.S.C. § 3720.

Limiting VA's property management options to subrogation strips all meaning from the provisions of chapter 37 and the precedent cited above. First, it makes no sense that VA would be required to wait out a redemption period, list a property with a real estate agent, repair and maintain the property, insure against damages to the home and third-parties, and then sell the property for the highest price, only to have to turn the proceeds over to a borrower who failed to repay his loan–even if the borrower does not make a claim until years after the original foreclosure sale. It also makes no sense that Congress would make VA's authority so specific as to all of the rights and requirements detailed above, but not expressly identify anywhere in the statute that the foreclosed borrower is entitled to the sales proceeds, or set out the specific procedures by which the borrower may go about recovering such amounts.

Mr. Anderson's interpretation also would lead to other nonsensical results. For instance, if subrogation were the only authority VA has with regard to property management options, the Secretary would be precluded from recouping expenses associated with the sales of acquired

properties. Similarly, if a lender has the option to convey the property to the Secretary for the net value, and the net value exceeds the amount of the guaranty, VA would only be permitted to recover the amount paid on the guaranty. This could result in millions of dollars in losses every year, jeopardizing the integrity of the program as a whole. Both outcomes are clearly contrary to Congressional intent in establishing the VA loan guaranty program in the first place.

Moreover, the fact that Congress both expects, and sanctions the VA's retention and use of the proceeds of foreclosure sales that are in excess of the amount of its guaranty is apparent in several Federal statutes enacted since 1989. First, beginning in 1989, the VA was obligated to provide to Congress, in connection with its Loan Guaranty Revolving Fund, estimates of the amount of revenues derived by the Fund, not only from "Federal Government contributions . . . ." and "Federal Government payments . . . .", but also from "investment income . . . sales of foreclosed properties . . . [and e]ach additional source of revenue." See 38 U.S.C. § 3734, P.L. 101-237, Title III, § 302(b) (1989) (emphasis supplied). Thus, Congress specifically recognized that the sale of foreclosed property was a legitimate generator of revenue for the VA separate and apart from the Federal funding that the VA received. This recognition persists to the present day in the continued requirement that the VA base, in part, its estimates of fund revenues upon the sales of foreclosed properties. See 38 U.S.C. § 3734 (2002). Moreover, because the information that the VA is required to report is used by Congress to improve the allocation of resources among credit programs and other spending programs pursuant to the Federal Credit Reform Act, see 2 U.S.C. § 661 et seq., Congress takes into account the VA's ability to self-fund as much as possible, whether with proceeds of foreclosure sales or otherwise, when determining the amount of the Federal subsidy.

Under the regime that Mr. Anderson proposes, whereby the VA would be required to surrender all amounts realized upon the sale of foreclosed property in excess of the amount of its guaranty to the defaulted borrower, Congress would not have any reason to require the VA to report the sales of foreclosed properties as revenue, because, by definition, there would be no revenue that the VA would be allowed to retain in connection with that activity. The existence of the reporting requirement in 38 U.S.C. § 3734, however, belies the assertion that the defaulted borrower, rather than the VA, has a right to revenues from the sale of a property in a sale conducted after the foreclosure sale.

That the VA is expected by Congress to retain profits from its sale of foreclosed property is also reflected in 38 U.S.C. § 3722, the statute that created the Veterans Housing Benefits Program Fund. 38 U.S.C. § 3722 unequivocally directs the VA to "deposit[] into the Fund . . . which shall be assets of the Fund . . . proceeds from the sale, rental, use or other disposition of property acquired under this chapter." 38 U.S.C. § 3722 (2001) (emphasis supplied). There are no "proceeds from the sale . . . of property acquired" under the VA loan guaranty program that are not amounts that the VA has realized from sale of the property of a defaulted borrower in excess of its guaranty, taking into account expenses that the VA may have incurred in connection with the property. The relevant case law makes clear that when the rights and financial obligations of the mortgagor, mortgagee, and guarantor among each other already have been determined by way of a foreclosure sale, the mortgagor has no further claim to any amounts that the guarantor may realize from a subsequent sale of the property. McKnight, 259 F.2d at 543; Fitzgerald, 650 F.2d at 362-63; Grant, 827 F. Supp. at 422; Jones, 155 F. Supp. at 56. As such, the "proceeds" of a subsequent sale are "assets of the [Veterans Housing Benefits] Fund," and

not the assets of the defaulted borrower. 38 U.S.C. § 3722. Thus, there is no authority for the proposition that the VA may, of its own accord, divert money from the Veterans Housing Benefits Fund, whether for a defaulted borrower or for any purpose other than paying for housing operational expenses pursuant to 38 U.S.C. § 3727(c).

In this context, the statutory landscape of which 38 U.S.C. § 3732 is an integral part neither contemplates, nor permits, the creation out of thin air of a rule limiting the VA to recover nothing more than the amount of its guaranty under the circumstances of this case. Rather, VA is, in fact, required to deposit into the Veterans Housing Benefits Program Fund all funds, including the recoupment of the guaranty and any additional proceeds as a result of having sold an acquired property. Indeed, not only does the solvency of the program depend in part upon the VA's retention of sales proceeds, but Congress relies upon VA's sales proceeds to help maintain the benefits program. Indeed, VA has no authority to divert sales proceeds elsewhere. As such, the plaintiff is asking this court to provide relief on which no claim may be based, and this Court should dismiss his case.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court dismiss plaintiffs' complaint upon the grounds that this Court lacks subject matter jurisdiction to entertain their complaint pursuant to RCFC 12(b)(1), and, in the alternative, upon the grounds that plaintiff has failed to state a claim on which relief may be granted pursuant to RCFC 12(b)(6).

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

s/ A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

July 15, 2008

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 15th day of July 2008, a copy of the Defendant's Motion To Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley