# In the United States Court of Federal Claims

No. 08-260 C

(E-Filed:  January 28, 2009)

| | |
|---|---|
| ANDERSON, PETER A., | ) Motion to Dismiss; RCFC |
| | ) 12(b)(1); RCFC 12(b)(6); |
| | ) Department of Veterans Affairs |
| Plaintiff, | ) (VA) Home Loan Guaranty |
| | ) Program; 38 U.S.C. § 3701-36 |
| v. | ) (2006); No Entitlement of a |
| | ) Plaintiff Mortgagor to Proceeds |
| THE UNITED STATES, | ) From a Resale by VA as |
| | ) Foreclosure Purchaser After |
| Defendant. | ) Foreclosure of Loan Partially |
| | ) Guaranteed by VA |

Christopher A. Anderson, North Scituate, RI, for plaintiff.

A. Bondurant Eley, Washington, DC, with whom were Gregory G. Katsas, Assistant
Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant
Director, Commercial Litigation Branch, Civil Division, Department of Justice,
Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge

Before the court are Defendant's Motion to Dismiss (defendant's Motion or Def.'s
Mot.), plaintiff's Objection to Defendant's Rule 12(b) Motions to Dismiss, plaintiff's
Memorandum in Support of Plaintiff's Objection to Defendant[']s Motion to Dismiss[1]
(plaintiff's Response or Pl.'s Resp.), Defendant's Reply to Plaintiff's Response to Its
Motion to Dismiss (defendant's Reply or Def.'s Reply), plaintiff's Supplemental
Memorandum in Support of Plaintiff's Objection to Defendant[']s Motion to Dismiss
(plaintiff's Supplemental Memorandum or Pl.'s Supp. Mem.), and Defendant's Response

---

[1] Plaintiff's Memorandum in Support of Plaintiff's Objection to Defendant[']s Motion to
Dismiss (plaintiff's Response or Pl.'s Resp.), on which the court relies for plaintiff's statement of
his position, was filed separately from an earlier-filed document titled [Plaintiff's] Objection to
Defendant's Rule 12(b) Motions to Dismiss.

to Plaintiff's Supplemental Memorandum in Support of Plaintiff's Objection to
Defendant's Motion to Dismiss (defendant's Response or Def.'s Resp.).  For the
foregoing reasons, defendant's Motion is GRANTED.

I.     Background

       A.     Procedural History

       On August 24, 2007 plaintiff filed a complaint in the United States District Court
for the Middle District of Florida.  Anderson v. Nicholson, No. 07-cv-1343, Dkt. No. 1
(M.D. Fla. Aug. 24, 2007).  On March 13, 2008 plaintiff filed a motion to transfer the
case to the United States Court of Federal Claims (USCFC).  Id. at Dkt. No. 29.  On
March 19, 2008 the district court granted plaintiff's motion and transferred the case to
this court.  Id. at Dkt. No. 30.  Plaintiff filed his complaint in this court on May 9, 2008
claiming a "breach of an implied right of action under Federal law for the failure to
refund Plaintiff's equity in a home purchased by Plaintiff with a loan guaranteed by the
Defendant following foreclosure of the loan by the lender, purchase of the home by
Defendant at the foreclosure sale and re-sale of the home by Defendant."  Complaint
(plaintiff's Complaint or Compl.), filed May 9, 2008 ¶ 3.  Defendant filed its motion to
dismiss on July 15, 2008.  Def.'s Mot. 2-3.

       B.     Factual Background

       Mr. Anderson, a veteran, purchased a parcel of real property in Florida in March
1996 that was financed by Wells Fargo Home Mortgage, Inc. (Wells Fargo) through a
note and a mortgage that was partially guaranteed by the United States Department of
Veterans Affairs (the VA).  Compl. ¶¶ 12-13; Def.'s Mot. 3.  The VA home loan
guaranty[2] program provides for partial guaranties on home loans for veterans.  38 U.S.C.
§§ 3701-36 (2006).  The guaranty "operate[s] as the substantial equivalent of a down
payment in the same amount by the veteran on the purchase price, in order to induce
prospective mortgagee-creditors to provide 100% financing for a veteran's home."
United States v. Shimer (Shimer), 367 U.S. 374, 383 (1961).

       Mr. Anderson became delinquent on his loan and Wells Fargo instituted
foreclosure proceedings in Florida state court in September 2000.  Compl. ¶¶ 14-15;
Def.'s Mot. 3.  Wells Fargo made a claim against the VA under the terms of the guaranty.

       [2] For the spelling of "guaranty" and its plural form, "guaranties," see American Heritage
Dictionary (AHD) at 778.  AHD 778 (4th ed. 2006).  Except for spelling within quotations, the
court follows the AHD.

Compl. ¶ 16; Def.'s Mot. 3.  At the court-ordered foreclosure sale the VA was the highest bidder for the property and purchased the property from Wells Fargo.  Compl. ¶¶ 17-20; Def.'s Mot. 3.  In August 2001 the VA sold the property to a third party in a private sale and received approximately $65,000 over and above the guarantied amount.  Compl. ¶¶ 21-22; see Def.'s Mot. 3.  Plaintiff claims that the VA is not entitled to the $65,000 profit and, instead, that the VA should remit the profit to him.  Compl.  ¶¶ 2, 22-25; Def.'s Mot. 3.

II.    Legal Standards

A.    Jurisdiction

The USCFC, like all federal courts, is a court of limited jurisdiction.  See United States v. King, 395 U.S. 1, 3 (1969).  The Tucker Act is the primary statute establishing the jurisdiction of the court.  28 U.S.C. § 1491(a)(1) (2006).  In relevant part, the statute provides that this court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States."  Id.

The Tucker Act provides the waiver of sovereign immunity necessary to sue the United States for money damages, but the plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute, or constitutional provision itself, in order for the case to proceed.  See United States v. Testan, 424 U.S. 392, 398 (1976).  As stated by the United States Court of Appeals for the Federal Circuit (Federal Circuit), the alleged source of the substantive right to money damages must "be reasonably amenable to the reading that it mandates a right of recovery in damages.  While the premise to a Tucker Act claim will not be 'lightly inferred,' . . . a fair inference will do."  Fisher v. United States (Fisher), 402 F.3d 1167, 1174 (Fed. Cir. 2005) (en banc) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)) (emphases and omission in original).

The burden of proof of establishing jurisdiction is borne by the plaintiff.  McNutt v. Gen. Motors Acceptance Corp. (McNutt), 298 U.S. 178, 189 (1936); Russell v. United States, 78 Fed. Cl. 281, 285 (2007).  If the defendant challenges jurisdictional facts, the plaintiff must support them with "competent proof."  McNutt, 298 U.S. at 189.  The plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper.  Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed. Cir. 1988).  Jurisdiction is a threshold matter and a case can proceed no further if the

3

court lacks jurisdiction to hear it.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

     B.    Motions to Dismiss

Rule 12(b) of the Rules of the United States Court of Federal Claims (RCFC) governs motions to dismiss.  Specifically, RCFC 12(b)(1) governs the dismissal of claims for lack of subject matter jurisdiction and RCFC 12(b)(6) governs dismissal of claims for failure to state a claim upon which relief can be granted.  RCFC 12(b).  The Federal Circuit recently enumerated three grounds on which the government "might file a motion to dismiss in a Tucker Act case:  (1)  lack of subject matter jurisdiction due to the lack of a money-mandating source; (2)  failure to state a claim upon which relief can be granted due to lack of a money-mandating source; and (3)  failure to state a claim upon which relief can be granted because the plaintiff is ultimately not entitled to recover money damages under the statute."  Greenlee County v. United States (Greenlee County), 487 F.3d 871, 876 (Fed. Cir. 2007) (citing Fisher, 402 F.3d at 1172-73).  The Federal Circuit reiterated that this court is to resolve motions to dismiss under grounds one and two "by a 'single step' at the outset of the case and 'the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.'"  Id. (quoting Fisher, 402 F.3d at 1172-73).

Whether a plaintiff has alleged facts sufficient to make out a cause of action is a separate inquiry than whether a plaintiff "'has a money-mandating source on which to base his cause of action.'"  Adair v. United States (Adair), 497 F.3d 1244, 1251 (Fed. Cir.) (2007) (quoting Fisher, 402 F.3d at 1173).  In Adair the Federal Circuit further explained the proper analysis for 12(b)(1) and 12(b)(6) motions:

> If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1).  If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

Id. (citations omitted).

     C.    Standard of Review

In deciding a motion to dismiss pursuant to RCFC 12(b)(1), "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974)). The standard for deciding an RCFC 12(b)(6) motion is identical. See Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted) ("When reviewing a dismissal for failure to state a claim upon which relief can be granted . . . , we must accept as true all the factual allegations in the complaint, . . . and we must indulge all reasonable inferences in favor of the [plaintiff] . . . .") (interpreting RCFC 12(b)(4), the predecessor to RCFC 12(b)(6)).

III.   Discussion

Defendant contends that plaintiff has not established that this court has jurisdiction over plaintiff's claims. Def.'s Mot. 3-10. Plaintiff claims there is jurisdiction in this court because he seeks a "declaration of rights pursuant to the federal Declaratory Judgment Act." Compl. ¶ 26. He also claims that the action is an "equitable action for restitution of surplus funds" and is "an action for breach of an implied right of action under Federal law." Id. ¶¶ 2-3. Finally, plaintiff attempts to invoke this court's Tucker Act jurisdiction by citing two federal statutes in the Complaint and a regulation in the Response. See Compl. ¶¶ 41, 49 (citing 38 U.S.C. § 3732(a)(1) (2006) and 38 U.S.C. § 5302 (2006)); Pl.'s Resp. 7 (citing 38 C.F.R. § 1.967 (2008)).

This case was transferred to this court from a United States District Court to cure a lack of jurisdiction in the district court. However, "[t]he mere transfer of a case from the District Court to [the USCFC] does not establish jurisdiction and the defendant is not estopped from arguing lack of . . . jurisdiction even if it may have urged lack of jurisdiction in the District Court based on jurisdiction in [the USCFC]."[3] Singleton v. United States, 6 Cl. Ct. 156, 165 (1984) (citing Marshall N. Dana Constr., Inc. v. United States, 229 Ct. Cl. 862, 865 (1982)).

---

[3] While the United States has been found within its rights under the law to urge possibly conflicting theories against the same plaintiff in different fora, the court has characterized such a strategy as a "whipsaw" of the plaintiff. See Phillips v. United States, 77 Fed. Cl. 513, 521 (2007). In a case not involving jurisdiction, the practice could be barred under the doctrine of judicial estoppel. See HighQBPO, LLC v. United States, 84 Fed. Cl. 360, 364 (2008) ("The doctrine of judicial estoppel posits that 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'") (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).

For the following reasons, defendant's Motion is GRANTED because this court lacks jurisdiction. In the alternative, and even if jurisdiction were found to exist as to any of plaintiff's claims, the court finds that plaintiff has failed to state a claim upon which relief can be granted.

A.    Plaintiff's Equitable Claims Are Outside the Jurisdiction of This Court

Plaintiff seeks several forms of equitable relief. Specifically, he asks for a "declaration of rights pursuant to the federal Declaratory Judgment Act," Compl. ¶ 26, or alternatively, characterizes his claim as an "equitable action for restitution of surplus funds," id. ¶ 2, or as "an action for breach of an implied right of action under Federal law," id. ¶ 3. The USCFC lacks jurisdiction to grant general equitable relief. Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (noting that "the Court of Federal Claims does not have general equity jurisdiction" and can only award equitable relief incidental to its Tucker Act jurisdiction). With exceptions for cases arising under the Administrative Dispute Resolution Act, usually bid protests,[4] and in certain contract cases,[5] any equitable relief "must be incidental to and collateral to a claim for money damages." Boubula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages."). "Stated another way, the [United States] Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" James v.

---

[4] The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b), confers jurisdiction on this court to:

> render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . .
>
> (2)  To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

28 U.S.C. § 1491(b) (2006). This is the court's bid protest jurisdiction.

[5] A portion of the Tucker Act, 28 U.S.C. § 1491(a)(2), permits this court to grant nonmonetary relief on claims arising under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), when the claims concern "disputes on which a decision of the contracting officer has been issued." 28 U.S.C. § 1491(a)(2).

Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)).

Accordingly, the court lacks jurisdiction over plaintiff's equitable claims and they must be dismissed.

B.      Plaintiff Has Failed to State a Claim Under the Tucker Act

1.      38 U.S.C. § 3732 Is Not a Money-Mandating Source of Law

Plaintiff claims that 38 U.S.C. § 3732(a)(1) is money-mandating.  Pl.'s Resp. 5. Section 3732(a)(1) states:

> In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Secretary of such default.  Upon receipt of such notice, the Secretary may, subject to subsection (c) of this section, pay to such holder the guaranty not in excess of the pro rata portion of the amount originally guaranteed.  Except as provided in section 3703(e) of this title, if the Secretary makes such a payment, the Secretary shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty.

38 U.S.C. § 3732(a)(1) (emphasis added).  The court must analyze whether the statute is money-mandating by determining "whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established." Greenlee County, 487 F.3d at 876.

Section 3732(a)(1) affords the Secretary of the VA (the Secretary) a right of subrogation[6] to the lender's rights when and to the extent that the VA makes a payment

---

[6] Subrogation is:

> broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right.  It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer.  Stated another way, it is a substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities.

(continued...)

7

on the guaranty of the borrower's loan.  38 U.S.C. § 3732(a)(1).  Here, the Secretary bought the property at the foreclosure sale, Compl. ¶ 20, a circumstance not addressed in § 3732(a)(1).  See 38 U.S.C. § 3732(a)(1).  The subrogation scenario contemplated in § 3732(a)(1) simply did not arise in this case.  Plaintiff claims a right to monetary damages based on a claim that he is within a class of persons who have participated in the VA home loan guaranty program who (1)  had a loan foreclosed by the lender, (2) where the property was bought by the VA in a foreclosure sale and (3)  where the VA thereafter resold the property for an amount greater than the amount of the VA loan guaranty.  See Compl. passim.  Essentially, plaintiff argues that, because the VA is subrogated to the rights of the lender "to the extent of the amount paid on the guaranty," he should be entitled to any money received by the VA in a subsequent resale of the property in excess of the amount of the guaranty.  Pl.'s Resp. 5-6 (citing 38 U.S.C. § 3732(a)(1)).  The text of 38 U.S.C. § 3732(a)(1) on which plaintiff reliefs contains absolutely no indication of any such entitlement in plaintiff.  To the contrary, the benefit of subrogation under § 3732(a)(1) is afforded to the VA against a borrower, not to a borrower against the VA.

      a.     The Section 3703(e) Exception to Section 3732 Does Not Support Plaintiff's Claim

---

[6](...continued)

73 Am. Jur. 2d Subrogation § 1 (2008) (footnotes omitted).

In the mortgage context:

> One who pays off a mortgage or encumbrance which the principal debtor has failed to discharge may be entitled to subrogation provided the entire mortgage debt is paid.  In other words, the doctrine of subrogation holds that where a person, other than the principal obligor, pays the mortgage indebtedness on land in which he has an interest equity will substitute him in place of the original mortgagee and vest that mortgagee's rights in him, thus, he may keep alive and enforce the lien insofar as is necessary for his protection.  Equity will substitute the person paying the debt with the original creditor so as to enable him to enforce the security for the purpose of reimbursement.  This right of subrogation may exist in favor of one who pays the encumbrance to protect his own interest in the property or who makes the payment because he is secondarily liable for the debt or for the discharge of the lien.

73 Am. Jur. 2d Subrogation § 52 (2008) (footnotes omitted).

The third sentence of § 3732(a)(1) begins with the phrase "[e]xcept as provided in section 3703(e)."  This exception is of no assistance to plaintiff.  Section 3703(e)(1) states:

> Except as provided in paragraph (2) of this subsection,[7] an individual who pays a fee under section 3729 of this title, or who is exempted under section 3729(c) of this title from paying such fee, with respect to a housing loan guaranteed or insured under this chapter that is closed after December 31, 1989, <u>shall have no liability to the Secretary with respect to the loan for any loss resulting from any default of such individual</u> except in the case of fraud, misrepresentation, or bad faith by such individual in obtaining the loan or in connection with the loan default.

38 U.S.C. § 3703(e)(1) (emphasis and footnote added).  This section provides that any veteran wishing to participate in the home loan guaranty program may pay a fee up front to forestall liability for the guarantied amount in case of default (but not in cases of fraud, misrepresentation or bad faith by the veteran).  <u>Id.</u>

Plaintiff's liability to the VA is governed by 38 U.S.C. § 3703(e).  Plaintiff purchased his real property after December 31, 1981.  <u>See</u> Compl. ¶ 13 (stating that plaintiff purchased his home in 1996).  Pursuant to 38 U.S.C. § 3729(a)(1), with exceptions not relevant here, all veterans wishing to obtain a home loan guaranty after 1981 are required to pay such a fee.  38 U.S.C. § 3729(a)(1) (added to the United States Code in 1982).  Additionally, there have been no allegations of fraud, misrepresentation or bad faith that would create liability on the part of Mr. Anderson to the VA.  <u>See</u> Def.'s Mot. <u>passim</u>; 38 U.S.C. § 3703(e)(1).

Neither 38 U.S.C. § 3703(e)(1) nor 38 U.S.C. § 3732 creates any obligation on the part of the VA to plaintiff.  The first rule of statutory construction is that where, as here, the statutory language is clear, that is the end of the inquiry.  <u>See</u> Hemscheidt Corp. v. United States, 72 F.3d 868, 871 (Fed. Cir. 1995) ("Language unmistakably certain on its face ends our inquiry.").  There is no phrase within 38 U.S.C. § 3732 or § 3703(e)(1) that could be read to suggest that the VA owes money to plaintiff.  The statute serves instead as a protection for veterans in certain circumstances against a possible claim by the VA in case of a deficiency.  Plaintiff argues that the VA has "abuse[d] . . . the subrogation

---

[7] "[P]aragraph (2) of this subsection" disallows the release of liability under 38 U.S.C. § 3703(e)(1) (2006) for loans that are "loan assumption[s]" under 38 U.S.C. § 3729(b)(2)(I) (2006) and loans to purchase manufactured homes.  Neither exception is relevant here.

power vested in the [VA] by Congress," Pl.'s Resp. 5, but there is no basis whatsoever in the text of 38 U.S.C. § 3732(a)(1) for plaintiff's argument.

       b.     Section 3732 was Enacted to Protect the Government–Not Borrowers

Section 3732(a)(1), like its predecessor code provisions, does not confer rights on borrowers; instead, it protects the government.  The provision "was enacted solely in the interest of the government as surety, not of defaulting obligors."  Gatter v. Nimmo (Gatter), 672 F.2d 343, 347 (3d Cir. 1982) (interpreting a predecessor to 38 U.S.C. § 3732).  The VA home loan guaranty program "relies on financial incentives to accomplish a welfare objective and does not purport to confer enforceable federal rights directly on the veteran-borrower."  Rank v. Nimmo (Rank), 677 F.2d 692, 697 (9th Cir. 1982).  Because the statute does not confer rights on borrowers, the statute is not "reasonably amenable" to a reading that it is money-mandating.  See Fisher, 402 F.3d at 1174.

       c.     Section 3732 Does Not Apply to Post-Foreclosure Events

Moreover, 38 U.S.C. § 3732 addresses the relationship between the VA as guarantor and the holder of the obligation secured by the borrower in the property if the Secretary makes a payment on the guaranty.  This case does not involve that circumstance.  Here, the Secretary purchased the property at foreclosure.  The VA sold the property for a $65,000 profit after the foreclosure sale.  See Compl. ¶¶ 19-21.  When a property is sold at a foreclosure sale, any money above the amount of the claim against the property is called a surplus.  See Fitzgerald v. Cleland (Fitzgerald), 650 F.2d 360, 361 (1st Cir. 1981).  Almost all states "have recognized that surpluses that arise out of foreclosure sales must ordinarily be returned to the debtor."  Id.  Here, when plaintiff's property was sold at a foreclosure sale, there was no surplus.  See Compl. 20.  Therefore, no surplus exists in this case.  The $65,000 profit was made by the VA on a resale of the property after a judicially-supervised foreclosure.[8]  See Compl. ¶¶ 17-22; Def.'s Mot. 3. Here, the property has been foreclosed upon and bought by the VA at the foreclosure sale.

_____

    [8] Plaintiff cites 38 C.F.R. § 36.4323(e) (2008) in support of his theory that he is obligated to the United States Department of Veterans Affairs (the VA).  Pl.'s Resp. 6 n.1.  However, section 36.4323(e) of title 38 of the Code of Federal Regulations states:  "Any amounts paid by the Secretary on account of the liabilities of any veteran guaranteed or insured under the provisions of 38 U.S.C. chapter 37 shall constitute a debt owing to the United States by such veteran."  38 C.F.R. § 36.4323(e)(1) (emphasis added).  As noted above in Part III.B.1.a, see supra Part III.B.1.a, and below in Part III.B.2, see infra Part III.B.2, plaintiff is no longer obligated to the VA because the foreclosure sale has been completed and plaintiff has paid a fee to be released from any obligation to the VA.

Id. Section 3703(c) protected plaintiff–in the absence of fraud, misrepresentation or bad faith–from liability to the VA.  See supra Part III.B.1.a.  But neither § 3703(c) nor § 3732 creates any rights in a veteran-borrower against the VA.  Id.  As discussed more particularly below in Part III.B.5, the resale is legally separate from and unrelated to the foreclosure purchase of the property by the VA.  See infra Part III.B.5.

        2.      38 U.S.C. § 5302 and 38 C.F.R. § 1.967 Are Not Money-Mandating Sources of Law as to Plaintiff

Plaintiff suggests that 38 U.S.C. § 5302, Compl. ¶ 49, and 38 C.F.R. § 1.967, Pl.'s Resp. 7, are money-mandating sources of law.  Section 5302(b) states, in part, that:

> With respect to any loan guaranteed, insured, or made under chapter 37 of this title [(the home loan guaranty program)], the Secretary shall . . . waive payment of an indebtedness to the Department by the veteran . . . following default and loss of the property, where the Secretary determines that collection of such indebtedness would be against equity and good conscience.

38 U.S.C. § 5302(b).  This section, in plain language, applies only to veterans who are indebted to the VA.  38 U.S.C. § 5302(b) (referring to "an indebtedness to the Department by the veteran").  Plaintiff is not indebted to the VA.  Mr. Anderson's home was sold in a judicially-supervised foreclosure sale and he was not indebted to the VA because of the operation of the exception language in 38 U.S.C. § 3703(e)(1).  See supra Part III.B.1.a; Compl. ¶¶ 19-20.  Because Mr. Anderson paid the appropriate fee, he does not have an obligation to repay the guaranty.  See 38 U.S.C. 3703(e)(1); see supra Part III.B.1.a.  Additionally, the VA has not taken any action that in any way suggests that Mr. Anderson is indebted to the VA.  See Def.'s Mot. passim.  Accordingly, this provision cannot be viewed as money-mandating as to Mr. Anderson.  Even if 38 U.S.C. § 5302(b) were money-mandating as to some persons, the facts of Mr. Anderson's case do not fit within the scope of the statute.  See Adair, 497 F.3d at 1258 (upholding a dismissal of a complaint on the basis of failure to state a claim where a statute and implementing regulations were money-mandating, but where the facts of the complaint did not fit within the statute).

Plaintiff suggests that 38 C.F.R. § 1.967 provides a money-mandating source of law.  Pl.'s Resp. 7.  Section 1.967 reads in relevant parts:

> (a) . . . any portion of an indebtedness resulting from participation in benefits programs administered by the Department of Veterans Affairs which has been recovered by the U.S. Government from the debtor may be considered

11

for waiver, provided the debtor requests waiver in accordance with the time
limits of § 1.963(b).

.   .   .   .

(d) . . . Only where the amount collected exceeds the balance of the
indebtedness still in existence will a refund be made in the amount of the
difference between the two.

38 C.F.R. § 1.967(a), (d).  Plaintiff claims that the "amount collected" by the VA
"exceeds the balance of the indebtedness" and that he is entitled to a refund under this
regulation.  See Pl.'s Resp. 7.  Plaintiff's argument is unavailing.  Section 1.967(a)
applies only to borrowers who are indebted to the VA and then only to amounts collected
"from the debtor."  38 C.F.R. § 1.967(a).  Plaintiff is not indebted to the VA because of
the operation of 38 U.S.C. § 3703(e).  See supra Part III.B.1.a.  Moreover, there is no
suggestion that any amount "has been recovered by the U.S. Government from the
debtor" (that is, from plaintiff), see 38 C.F.R. § 1.967(a), a condition precedent to "a
refund," see 38 C.F.R. § 1.967(d).  In addition, the court does not view the governmental
action contemplated by § 1.967(a), "considered for waiver," to be money-mandating, but
rather an action within the discretion of the government.  See 38 C.F.R. § 1.967(a).
Plaintiff cannot rely on this regulation as a money-mandating source of law.[9]

─────────────────

[9] Even if the statutes and regulations discussed in Part III.B.2 of this opinion were
money-mandating, there is a requirement that plaintiff go through an administrative procedure
before coming to this court.  Section 1.967(a) of title 38 of the Code of Federal Regulations
requires that "the debtor request[] a waiver" in accordance with VA regulations.  38 C.F.R. §
1.967(a) (2008).  Section 5302(b) of title 38 of the United States Code requires that the veteran
submit "an application for relief" to the VA within one year of being notified about the deficiency
and informed about the application process.  38 U.S.C. § 5302(b) (2008).

Plaintiff has not alleged in his complaint that he has exhausted the administrative
remedies available to him.  See Compl. passim.  Plaintiff claims that there is no administrative
remedy because no administrative remedies "exist to review an otherwise ultra vires act."
Plaintiff's Supplemental Memorandum in Support of Plaintiff's Objection to Defendant[']s
Motion to Dismiss (plaintiff's Supplemental Memorandum or Pl.'s Supp. Mem.) 1 (emphasis
added).  The United States Court of Appeals for the Federal Circuit has developed a definition of
"ultra vires" in the takings context, which is useful in this case.  See Del-Rio Drilling Corp. v.
United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998).  Ultra vires conduct is conduct that is
"either explicitly prohibited or [is] outside the normal scope of the government official[']s
duties."  Id.  No action complained of here was ultra vires; the actions were all within the
regulations established under the VA home loan guaranty program.

12

Even if 38 C.F.R. § 1.967 were viewed as money-mandating as to some persons, the facts of Mr. Anderson's case do not fit within the scope of the regulation.  See Adair, 497 F.3d at 1258 (upholding a dismissal of a complaint on the basis of failure to state a claim where a statute and implementing regulations were money-mandating, but where the facts of the complaint did not fit within the statute).

     3.     Neither the General Statutory Scheme of the VA as a Department of Government nor the VA Home Loan Guaranty Program Is Money-Mandating As to Mr. Anderson

Plaintiff argues that "the VA's general statutory scheme [is] 'money-mandating' under the Tucker Act as it supports the return of funds to the Plaintiff."  Pl.'s Resp. 9-10 ("The very notion that the VA can keep the hard[-]earned equity of a Veteran, functionally punishing the Veteran for having an asset, runs counter [to] the obvious purpose behind Congress's creation of the [VA].").  In the alternative, plaintiff states that the loan guaranty program, taken as a whole, is money-mandating.  See id. at 9.  In support, plaintiff quotes the statement of the United States Court of Appeals for the First Circuit (First Circuit) that "'the loan guarantee act evinces an intent to treat veteran mortgagors favorably, not harshly.'"  Pl.'s Resp. 9 (quoting Fitzgerald, 650 F.2d at 362).

It is true that "separate statutory provisions can be read together to create a money-mandating statutory scheme sufficient to create jurisdiction under the Tucker Act."  Sharp v. United States, 80 Fed. Cl. 422, 427 (2008) ("[B]oth [the USCFC] and the Federal Circuit have found Tucker Act jurisdiction in cases in which the money-mandating 'separate source of substantive law' was a statutory scheme rather than a single statutory provision.") (citing El-Sheikh v. United States (El-Sheikh), 177 F.3d 1321, 1323-24 (Fed. Cir. 1999) and Ralston Steel Corp. v. United States, 169 Ct. Cl. 119, 340 F.2d 663, 667-68 (Ct. Cl. 1965)).  However, the court does not find persuasive plaintiff's argument that the general statutory scheme of the VA is a money-mandating source of law.

     a.     The General Statutory Scheme of the VA as a Department of Government Is Not a Money-Mandating Source of Law

While in some instances a regulatory scheme taken as a whole can be money-mandating, it appears to the court unlikely that the organic laws and regulations of an entire cabinet-level agency would be money-mandating.  Plaintiff claims that "the statutory scheme of the Veteran's Administration is to help [v]eterans," Pl.'s Resp. 8, in order to support his conclusion that his claim arises from a money-mandating source of law.  Several departments of the United States government, for example, the United States Department of Education and the United States Department of Housing and Urban

Development have missions of benefiting groups of people that are analogous, more or less, to the mission of the VA to help veterans.  Under plaintiff's logic, all sources of law relating to the various departments in government with missions to assist persons would be money-mandating.  The logic of plaintiff's argument is simply inconsistent with the limited waiver of sovereign immunity provided by the Tucker Act.  See, e.g., Orff v. United States, 545 U.S. 596, 601-02 (2005) (noting that "a waiver of sovereign immunity must be strictly construed in favor of the sovereign").

In El-Sheikh, the Federal Circuit found a money-mandating scheme by connecting two provisions of the United States Code together–one that defined "employee" to include the plaintiff and another that enabled an "employee" to sue the employer in federal court.  El-Sheikh, 177 F.3d at 1323-24 (finding that, read together, 29 U.S.C. § 203(e)(2) (2006) and 29 U.S.C. § 216(b) (2006) were money-mandating for the purpose of Tucker Act jurisdiction).  Here, unlike the situation in El-Sheikh, plaintiff has not pointed to any provisions that, when reasonably read together, would indicate that the general scheme of laws under which the VA is organized is money-mandating.  See Pl.'s Resp. passim.  Accordingly, the court declines to find that the general scheme of the VA is a money-mandating source of law.

      b.      The VA Home Loan Guaranty Program Is Not a Money-Mandating Source of Law

Nor does the court find persuasive Mr. Anderson's argument that the general scheme of the VA home loan guaranty program is money-mandating.  The VA home loan guaranty program was meant to "operate as the substantial equivalent of a down payment in the same amount by the veteran on the purchase price, in order to induce prospective mortgagee-creditors to provide 100% financing for a veteran's home."  Shimer, 367 U.S. at 383.  However, the program "relies on financial incentives to accomplish a welfare objective and does not purport to confer enforceable federal rights directly on the veteran-borrower."  Rank, 677 F.2d at 697 (finding that the home loan guaranty program does not give a veteran a private right of action against a private lender).  The general scheme of the VA home loan guaranty program is not to provide enforceable rights to the veterans but to promote a welfare objective and, at the same time, protect the interests of the VA through provisions that allow it to manage the program and protect its financial interests.  Again, unlike the plaintiff in El-Sheikh, Mr. Anderson has not pointed to specific provisions that can be read together to show that the program is money-mandating as a waiver of sovereign immunity under the Tucker Act.  See Pl.'s Resp. passim.

The provisions Mr. Anderson cites in his briefing, whether addressed separately or read together, cannot be viewed as money-mandating.  Accordingly, plaintiff's claim

14

under the general scheme of the VA home loan guaranty program must be dismissed for lack of subject matter jurisdiction.

       4.        A VA Policy Manual Is Not Money-Mandating

      Plaintiff's Supplemental Memorandum cites a VA policy manual which, plaintiff argues, allows "possible adjustment of obligors' debts" after a sale and enables the VA to "reflect the VA's actual net loss or gain." Pl.'s Supp. Mem. 2; Dept. of Veterans Aff., Policies and Procs. Manual (Policy Manual), M26-4, Procedures–Claims and Liquidation of Security, § 3.14(a) Analysis After Sale of Property by VA available at http://www.warms.vba.va.gov/admin26/m26_04/ch03.doc.

      Plaintiff's reliance on the Policy Manual is unavailing. As discussed above in Part III.B.1.a, plaintiff is not obligated to the VA and does have any "debts" to the VA. See supra Part III.B.1.a; Policy Manual § 3.14(a). Therefore, treatment of the proceeds of the resale after the foreclosure of plaintiff's property do not appear to the court to be within the scope of the Policy Manual provision. In addition, the Policy Manual, even if it were applicable to the facts of plaintiff's case, cannot be used as a money-mandating source of law to confer jurisdiction on this court because the Policy Manual does not have the force of law. As stated by the Third Circuit:

      [A VA Policy Manual] satisf[ies] none of the criteria which have been developed by the courts to determine whether agency regulations have the force of law. They have never been published in the Federal Register. They have not been promulgated with the procedural requirements for rulemaking. They have never been intended for or used by anyone other than VA employees.

Gatter, 672 F.2d at 347 (citations omitted); accord Killip v. Office of Pers. Mgmt., 991 F.2d 1564, 1569 (Fed. Cir. 1993) (noting that "even if [a policy manual is] 'interpretive' . . . [it] lacks the 'force and effect of law'") (citing Chrysler Corp. v. Brown, 441 U.S. 281, 301 (1976)). The Policy Manual is not a source of law that can support Tucker Act jurisdiction.

      Furthermore, even if the Policy Manual were a source of law on which plaintiff could rely for Tucker Act jurisdiction, the text on which plaintiff relies neither "mandates" the payment of money nor supports a "fair inference" of such a mandate. See Fisher, 402 F.3d at 1174. The phrase "possible adjustment of obligors' debts," cited by plaintiff, Pl.'s Supp. Mem. 2, indicates a discretionary activity.

       5.        Plaintiff Has Lost All Rights in the Property At Issue

Mr. Anderson no longer has any rights in the property at issue.  State law and general property law principles, when not in conflict with federal law, are controlling for the law of mortgages in relation to the home loan guaranty program.  See Rank, 677 F.2d at 697 (noting that "'mortgage foreclosure has traditionally been a matter for state courts and state law'" and concluding that it was "most improbable that the VA Act was intended to authorize the federal courts to create, with respect to the area of VA-guarantied home loans, a federal common law of mortgages to supplement or supplant the law provided by the states" (quoting Roberts v. Cameron-Brown Co., 556 F.2d 356, 361 (5th Cir. 1997))); Fitzgerald, 650 F.2d at 362 (noting that the regulations under the VA home loan guaranty program "are to be interpreted in light of traditional property law practices").  "[T]he rights of all parties are ordinarily determined as of the time of foreclosure . . . ."  Id. at 363.  According to the "settled principle of mortgage law . . . the value of [a] mortgagor's equity in the mortgaged property is fixed by the amount bid at the foreclosure sale."  McKnight v. United States (McKnight), 259 F.2d 540, 544 (9th Cir. 1958).

The real property in this case is located in Florida, Compl. ¶ 5, and, accordingly, Florida law and general property law principles control.  Under Florida law, "the mortgagee . . . acquires rights of possession and title in the mortgaged property [once] there has been a 'default, court foreclosure, and sale to the mortgagee and transfer of title to [the mortgagee]."  Morris v. Osteen (Morris), 948 So. 2d 821, 825 (Fla. Dist. Ct. App. 2007) (quoting Martyn v. First Fed. Sav. & Loan Ass'n, 257 So. 2d 576, 580 (Fla. Dist. Ct. App. 1971)).  The property at issue has been foreclosed on by Wells Fargo and, thus, Mr. Anderson had "no right to compel a mortgagee to account to him for any profit made upon a subsequent resale of the premises."  See McKnight, 259 F.2d at 544.  Plaintiff had no rights in the property as of the date of the foreclosure at which point the time for redemption had passed.  See Morris, 948 So. 2d at 825-26 (discussing the right of redemption under Florida law).

Grant v. U.S. Dep't of Veterans Affairs (Grant), 827 F. Supp. 418 (S.D. Tex. 1993) is closely analogous to the current situation.  Grant, 827 F. Supp. at 418.  In Grant, the court addressed the issue of whether or not a veteran is entitled to a surplus after a foreclosure sale and decided that a veteran was not so entitled.  See id. at 422.  The Grant court stated:

> [Plaintiffs] assert that they should be the beneficiaries of the subsequent sale of the property by the VA, the second conveyance after the foreclosure sale.  It is well established, however, that sales subsequent to the foreclosure sale of property financed by a VA-guaranteed loan are simply irrelevant to the initial mortgagor's rights because the parties' rights are determined at the time of the foreclosure sale.

16

Id.

Plaintiff relies on Fitzgerald, Pl.'s Resp. 13 (citing Fitzgerald, 650 F.2d at 360), for the proposition that the VA must return the surplus to the borrower.  The facts in Fitzgerald, however, are dissimilar to the facts of this case.  A surplus in Fitzgerald arose during the foreclosure process.  Fitzgerald, 650 F.2d at 363.  Here, plaintiff is claiming rights in a "surplus," Compl. ¶ 31, but there was no surplus at the judicially-supervised foreclosure sale of plaintiff's property.  Instead the VA realized a profit in a resale subsequent to a completed judicially-supervised foreclosure sale.  See Compl. ¶ 22. Under the specific facts of Fitzgerald, the court decided that general principles of property law dictated that the VA was required to return the surplus to the veteran. Fitzgerald, 650 F.2d at 362-63.  The Fitzgerald court based its decision, in part, on events that happened during the foreclosure process.  Id. at 361-63.  In Fitzgerald, the VA did not take ownership of the property under a judicially-supervised foreclosure sale.  See id. at 361-62.  Here, there was a judicially-supervised foreclosure sale.  See Compl. ¶ 20.

The money plaintiff seeks was obtained by the VA from a sale subsequent to a completed foreclosure.  Compl. ¶¶ 20-22.  The Fitzgerald court acknowledged that "subsequent sales after foreclosure are irrelevant."  Fitzgerald, 650 F.2d at 363 (citing McKnight, 259 F.2d at 544).  Under traditional property law, "surpluses that arise out of foreclosure sales must ordinarily be returned to the debtor."  Id. at 361.  However, in Mr. Anderson's case, there was a foreclosure sale and the price paid at the foreclosure sale did not yield any surplus.  See Compl. ¶ 21.  Mr. Anderson's rights to the property were extinguished on the date of the foreclosure.

The Fitzgerald court found that not returning the surplus would produce a "harsh" and inequitable result in the circumstances of that case.  Fitzgerald, 650 F.2d at 362 (noting that the home loan guaranty program has an implied "obligation to treat [the guaranty] in accordance with ordinary property law principles at least where those principles would prevent inequitably harsh treatment of veteran mortgagors and where the VA has not seen fit to publish regulations to the contrary").  Here, there has not been a harsh result.  Mr. Anderson defaulted on his loan; however, because of the operation of 38 U.S.C. § 3703(e) and 38 U.S.C. § 3732(a)(1), he does not owe the VA any money. See supra Part III.B.1.a.  Because Mr. Anderson's rights in the proceeds of any subsequent sale of the property were cut off on the date of the foreclosure sale, he has failed to state a claim and his complaint must be dismissed.

6.  VA Statutes and Regulations Allow the VA to Retain Proceeds From Sales of Foreclosed Properties

Plaintiff argues that there is no federal law that authorizes the VA to retain the proceeds of a resale of a foreclosed property. Pl.'s Resp. 16-19. However, defendant argues that subsequent statutory enactments after Fitzgerald indicate that Congress expected and knew that the VA would account for the proceeds of the home loan guaranty program, and that the proceeds include resale of foreclosed properties. See Def.'s Reply 12. Plaintiff claims that statutory enactments that require the VA to account for the money in the VA home loan guaranty program do not prove that the VA can retain proceeds beyond the amount of the guaranty. Pl.'s Resp. 19. Defendant responds by stating that "Congress would not require [the VA] to report any income from foreclosed properties if it also intended for [the VA] to do what Mr. Anderson suggests." Def.'s Reply 13.

In particular, defendant points to the requirement that the VA report to Congress investment income that includes "[s]ales of foreclosed properties." 38 U.S.C. § 3734(b)(2)(C) (2006). Defendant argues that this provision indicates that Congress is aware that the VA relies on sales as part of the funding for its home loan guaranty program. The Federal Credit Reform Act, 2 U.S.C. §§ 661-661f (2006), is the legal framework under which Congress determines funding for loan programs throughout the various departments of government. 2 U.S.C. § 661d(b) (authorizing agency financing accounts). The fund for the home loan guaranty program is called the Veterans Housing Benefit Program Fund (VHBP Fund). 38 U.S.C. § 3722(a). The assets of the VHBP Fund include "proceeds from the sale, rental, use, or other disposition of property." 38 U.S.C. § 3722(c)(3)(B). Section 3722(c)(3)(B) clearly contemplates that the VA will retain proceeds from foreclosure sales.

7.     Lack of a Statutory Provision to Refund Surplus

There is no statutory authorization to refund money to Mr. Anderson. No such provision is found in chapter 37 of title 38 of the United States Code or in VA regulations. When there is "particularization and detail" in a statutory scheme that Congress has created, a court should not add provisions that are not present in the scheme. See Iselin v. United States, 270 U.S. 245, 250-51 (1926). Here plaintiff seeks, in effect, an enlargement of a statute.

Plaintiff also argues that the foreclosure has nothing to do with the issue at hand. Pl.'s Supp. Mem. 5. He argues that the issue is whether the VA has the authority to keep the surplus and not whether or not Mr. Anderson has any substantive rights to the surplus. Id. This argument fails both because there is no surplus and because there is no

18

substantive law enabling the VA to return its profits from a resale after a completed foreclosure.[10]

The fact that there is no provision enabling the payment of such funds is dispositive. As the Court has noted, "The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress." United States v. MacCollum, 426 U.S. 317, 321 (1976) (citing Reeside v. Walker, 52 U.S. (11 How.) 272, 291 (1851)). There is no authority for the payment to Mr. Anderson of the public money he seeks. Plaintiff's claim must be dismissed.

IV.    Conclusion

For the foregoing reasons, plaintiff has not established that this court has jurisdiction to hear any of his claims and his claims must be dismissed. Even if this court had jurisdiction to hear any of plaintiff's claims, the case must be dismissed because plaintiff has not shown he is "entitled to recover money damages" under the relevant sources of law. See Greenlee County, 487 F.3d at 876; RCFC 12(b)(6). Dismissal pursuant to RCFC 12(b)(6) is appropriate "when the court determines that the facts as asserted do not entitle the claimant to a legal remedy." Godwin v. United States, 338 F.3d 1374, 1377 (Fed. Cir. 2003) (discussing RCFC 12(b)(4), the predecessor to RCFC 12(b)(6)). Here, the facts Mr. Anderson has alleged in his Complaint state no claim upon which relief can be granted.

Defendant's Motion to Dismiss is GRANTED and the Clerk of the Court is DIRECTED to enter judgment in favor of the defendant.[11]

_____

[10] Even if there were a money-mandating source of law enabling the return of the surplus, plaintiff has not exhausted his administrative remedies. See supra Part III.B.2 at n.9.

[11] Before the court is also plaintiff's Application to the Clerk of the Court of the United States Court of Federal Claims for Entry of Default Pursuant to Rule 55(a) (plaintiff's Application), filed July 9, 2008 and Defendant's Response to Plaintiff's Motion for Default Judgment (defendant's Response), filed July 15, 2008. A decision on the merits is favored over a technical dismissal of a case. See Info. Sys. & Networks Corp. v. United States, 994 F.2d 792, 795 (Fed. Cir. 1993) (stating that it is "well-established . . . that a trial on the merits is favored over default judgment"). Pursuant to Rule 55(b) of the Rules of the United States Court of Federal Claims (RCFC), "A default judgment may be entered only if the claimant establishes a claim or right to relief by evidence that satisfies the court." RCFC 55(b)(2). RCFC 55(b) has no application to the facts of this case. Moreover, the court cannot enter judgment for plaintiff where the court lacks jurisdiction over plaintiff's claims. See, e.g., Folden v. United States, 379

(continued...)

IT IS SO ORDERED.

                                        s/ Emily C. Hewitt
                                          EMILY C. HEWITT
                                          Judge

---

[11](...continued)
F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte.") (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)).  For the foregoing reasons, and because the court has granted defendant's Motion to Dismiss, the court DENIES AS MOOT plaintiff's Application.